Our next case for argument is Booker v. Williams. Mr. Yavorsky I'm sure if all those lawyers just knew what the second case was about, they would have stayed. They're lost, Your Honor. Please proceed. And may it please the Court, Dennis Yavorsky on behalf of Appellant would like to reserve three minutes for rebuttal. In 2003, Joseph Booker was convicted of murder and sentenced to 55 years in prison. For the last 20 years, he has maintained his innocence and challenged the constitutionality of his conviction. The district court incorrectly decided his habeas petition on the ground of procedural default. For the following reasons, this court should reverse. First, the rule against hybrid representation was not an adequate independent state ground to serve as a basis for barring federal review of Booker's stripling claim. Second, even if there was a default, it should be excused because it was attributable entirely to factors external to him. And finally, he has demonstrated a reasonable probability of success on the merits of his stripling claim with his alleged errors of his trial counsel. Mr. Yavorsky, can I ask you whether, in your view, a discretionary rule can ever be an adequate and independent state ground? Yes, it can, provided that it has certain factors or a certain criteria under which it's applied. As pointed out in our brief, there are a number of Illinois cases which completely disregard the rule without any kind of reasoning that really create a problem of consistency and of notice to litigants who are wondering whether the rule will be applied to them. Well, just because you find some outlier cases, didn't we say in Clemens v. Pfister that this precise rule, the hybrid representation rule, which as far as I know is universal, it's certainly a rule that we apply in the federal courts as well, didn't we say it was, in fact, an adequate state ground? Well, in Clemens, of course, it erodes from Illinois. Yes, Your Honor. In Clemens, the court held that the rule was applied adequately in his case. The argument that Clemens brought forth in that case was that it was applied freakishly to him, in part because it was decided after his motion to proceed pro se was decided after the decision was issued in this case and a bunch of other factors that were specific to the application of the rule in that particular case. The issue here is whether the Illinois courts have applied the rule in a haphazard manner historically. But that was also the issue in Clemens. It seems to me you're asking us to overrule Clemens without facing up to it. Do you want us to overrule Clemens? I would say that Clemens can be interpreted narrowly as saying the rule is adequately applied in that particular case. That's inconsistent with your argument, though, because what you're saying is globally in Illinois, the state courts do not have a consistent enough practice that this can count for notice and adequate and independent state grounds. So how it gets applied in a particular case doesn't really matter. You're looking at the overall understanding of Illinois and whether it's just the judges in Illinois flipping coins or whether it's them saying, well, in death cases it's this and in some other kind of cases that, and it's a discretionary matter, we may relax the rule occasionally. But in general, it's our background rule. If this court believes that it addressed the consistency of the application of the rule against hybrid representation in Clemens, then it would have to be overruled. Do you really think that we should be in the business of maintaining statistics on how the Illinois courts apply this hybrid representation rule? You seem to be saying that's where we should go and we ought to see whether they have a four- or five- or seven-factor test that they apply consistently. That gets us, as I think we said in an opinion called pre-HODA some 30 years ago, that would get us diving very deep into the weeds of state court procedures. Your Honor, the issue is less a matter of statistics and more a matter of what notice is being given to litigants. The notice that's being given to litigants, I would suggest, is you can't do this. Once in a while we'll make an exception, but don't count on it. That kind of conception of the rule against hybrid representation was not clear from the Illinois courts to Mr. Booker. For that reason, among others, even if there is a default in this particular case, it should be excused. In this particular case, Mr. Booker engaged in hybrid representation to begin with because he was following the advice of his counsel. Isn't that the real problem? His lawyer said to him, foolishly in my opinion, but his lawyer said to him, I'm going to bring forth this actual innocence argument. I think that's the winner of an argument, and I am not going to file a brief that includes this ineffectiveness of counsel argument. That's the kind of judgment we ask lawyers to make. We don't necessarily expect them to bring up every issue. Of course, Mr. Booker wanted 13 additional issues. He wanted a whole lot of additional issues to be brought into the case. His lawyer says no, but then his lawyer goes further and says, oh, you can file a separate memorandum, and that will be enough, in a sense, for you to preserve the point. That was very bad advice, but that's not the lawyer who you're able to attack here. What we're trying to attack is, as I understand, the original trial and appellate lawyers for their miscellaneous other failures. Well, the underlying claim is a claim of ineffective assistance of trial counsel. Exactly, because trial counsel wasn't talking to these witnesses, and isn't that right? Right. The errors that are alleged include a failure to investigate as well as a failure to suppress unduly suggestive line-up identification evidence, and those are errors by his trial attorney. However, in order to preserve those claims against a procedural default, the court should consider. And he didn't through his lawyer. And his post-conviction lawyer gives him the impression, actually it seems said pretty clearly, that he could file, you know, that this lawyer would forward any pro se filing along to the court, and the court followed its regular rules and said, I'm not going to listen to that. Exactly, and so the issue here is in order to preserve the ineffective assistance of trial counsel claim, the appointed counsel errors here in misleading counsel, which, by the way, the court didn't take the time to correct and say, look, you can't engage in hybrid representation, the mechanism to actually cure hybrid representation and preserve your claim. These are the steps that you would have to go through. You know, the court was aware of the correspondence that went on between Raina and Mr. Booker and never corrected or said that this was bad advice or said that this was misleading or wrong in any way. And so, you know, he had no notice, he had no reasonable notice of how to preserve his claim. The only thing that he did, he did the only thing, I'm sorry, he did everything that he needed to do, which was to follow his counsel's advice. But unfortunately, I mean, under the law, you don't really, unfortunately for Mr. Booker, there is essentially no way to get at any alleged ineffectiveness of the advice of counsel that you're now talking about, not the trial and appellate, but the post-conviction person who gives him the bad advice about preserving the trial ineffectiveness claim. Well, Martinez talks about an exception to that general rule where post-conviction trial, post-conviction counsel error can't establish a cause to excuse a default. And Martinez says clearly that that exception applies at the first occasion that the state court allows a prisoner to bring in an effective assistance of trial counsel claim. Now, in this particular case, the state court incorrectly denied him that opportunity and said that he waived his right to bring in effective assistance of counsel. Right, by not doing it on the direct appeal. Right, exactly, and that was a clear misapplication of Illinois law, and the state doesn't even argue that that was correct. And so because of that, the first opportunity in this particular case that he would have been allowed to bring his Strickland claim was at post-conviction appeal. It was at the time that he engaged in hybrid representation, and so that puts Reyna's errors in misleading him under the purview of the rule. Let me come back to Judge Wood's question. I did not understand your brief to be making a contention that post-conviction counsel was being attacked as ineffective, and I didn't read the Certificate of Appealability as broaching such a question. Am I misreading these documents? Well, Reyna's, the appointed counsel's, ineffectiveness is being attacked insofar as he was ineffective in preserving the claim, the underlying claim being ineffective assistance of trial counsel. But where is that clearly? I mean, I had the same trouble Judge Easterbrook did. It's not that I can't discern it from the facts, but we follow the arguments that are made in the briefs, and I didn't see, like, a Martinez section of your brief. Or any Martinez claim in the Certificate of Appealability, or the request for one. The Martinez case is discussed in our opening brief, and this very argument is made. I can point you to a page number if you like, and I'm happy to submit an additional letter to the court if necessary. But you still have the Certificate of Appealability problem, because actually, you know, as you know, in Certificates of Appealability, there are all sorts of things you can complain about. You have to tell the court what they think the lawyer did, or which lawyer. And I'm staring at the Certificate of Appealability, and it says, Becker has made a substantial showing of the denial of his right to effective assistance of trial counsel. No mention of any post-conviction counsel. You didn't ask to expand the Certificate of Appealability, did you? No, but I believe the Certificate. So I'm not missing something. And I don't have the Certificate directly in front of me, but to the best of my recollection, and once again I'm happy to submit an additional letter on this, the Certificate stated that we did not have to expand it to address additional errors. What? I don't, well, that would be an unusual certificate, I'll just say. So even irrespective of Verena's errors, neither the court or, you know, the fact that he engaged in hybrid representation was a decision that was made entirely external to him, and therefore his default should be excused. As stated more in-depth in our brief, we established a reasonable probability of success on this Strickland claim because of the additional evidence that a reasonable investigation would have uncovered. And I would like to reserve three minutes of rebuttal. Thank you. Mm-hmm. Certainly, Counsel. Ms. O'Connell. May it please the Court. I'm Assistant Attorney General Erin O'Connell on behalf of the Respondent-Warden. This Court should affirm the District Court's finding that Petitioner's claim was procedurally defaulted. This Court squarely held in Clemens v. Feister that the rule applied here against hybrid representation is an adequate rule that supports a procedural default on federal habeas. Both the Illinois Appellate Court and the Illinois Supreme Court plainly relied on the rule against hybrid representation to reject his pro se filings. I would also emphasize that Petitioner himself was plainly aware of the bar against hybrid representation as evidenced by his own motion to the Appellate Court to permit him to proceed on a pro se supplemental filing, where he acknowledged that there was generally a bar on hybrid representation but asked the Court for special dispensation under the facts of his particular case. But what are we to do with the fact that post-conviction counsel I mean, I realize if you parse this very carefully, maybe he used the word may instead of will or something, but post-conviction counsel certainly gives him the impression that he's doing enough to preserve this argument as he goes through. However, for all we know, if post-conviction counsel had said the only thing that's preserved is what I put in this brief, maybe he would have fired the counsel and gone ahead pro se, which would have made him better off right now because he was going to raise this point. Maybe a lot of other points that had no merit, but he was going to raise this point. I do disagree that he would have been better off firing post-conviction counsel. We know that he didn't prevail on his actual innocence claim, but PC counsel plainly thought that was his most promising claim to raise on appeal. But those are long shot claims, of course. And he did get an evidentiary hearing on that claim in the state trial court, where at least he made a colorable enough claim to get that. I do think the letter can be construed in a way that's a little more favorable. He did say you may preserve it, and it actually wasn't terrible advice to give him to attempt to file it. So the Kaiser case had come out from this court, and it was non-precedential, but it suggested that this could potentially qualify as fair presentment. So it was solid advice that he could attempt to do it this way and try to preserve his claims. I don't understand how you can argue that because the state's position has been there is just this very firm rule in Illinois against hybrid representation, quite similar to the rule in probably every other jurisdiction we can both think of. And it's okay for counsel to misadvise him that this rule is like Swiss cheese, you know, riddled with exceptions and holes. And so he can slide in under one of those exceptions. We do think it's a discretionary rule, and the courts have, on occasion, permitted pro se supplemental filings. It's certainly a rare thing, but counsel could properly tell him this is a possibility. You could potentially file this brief, and it could preserve your claims for federal habeas review. Doesn't he have to say, but there's only a 2% chance that this will work? I mean, something. The guy is told, do this, and you've preserved your claims, or at least that's what he hears. He's not a sophisticated lawyer. He does it, and then the rug gets pulled out from under him. I do think counsel attempted, perhaps inartfully, to tell him he was taking the risk. He did say in this very letter, the court may disagree with the cases I'm citing to you, and it may find that these are defaulted. But counsel emphasized, if that happens, you can rely on this claim of innocence that I am pursuing on appeal as a potential basis to excuse a federal default. And petitioner has abandoned that argument in this court. The gateway use of innocence, yeah. Correct. But counsel did tell him that that option was available to him. Of course, this wouldn't provide cause. Even if counsel had performed poorly, the decisions of PC counsel are attributable to his client for purposes of whether he can establish cause for a default. So it's essentially not within the purview of this court to say that it was an error by PC counsel that would excuse petitioner from complying with the state procedural rule. But that gets us to the line that Martina's carved out because, of course, the general rule has long been you don't have a Sixth Amendment right to effective assistance of counsel at the post-conviction stage. But then Martina says, but there may be some circumstances in which that's actually your first shot at it and you then do have that right. As we were discussing with Mr. Yavorsky, it's hard to see, other than that one page in their brief, where ineffectiveness of post-conviction counsel is argued. And it's a complex enough area that it would probably need some development. That's correct. We did respond to that argument in our brief to point out that Martina's provided that excuse in a very limited circumstance. And I think the most important limitation here is it's the first opportunity. So in this case, that was a post-conviction trial court. That's not where the relevant default occurred here. Martina's and the subsequent cases said we're not adopting an exception for PC appeal. I guess while we're talking about errors, the post-conviction trial court seems to have made a doozy in finding waiver for not having raised this in the direct appeal. And I guess what troubles me is how much of the complications since then have stemmed from that error, really a very basic one as I understand it. So I would disagree with that. And I think that the proceedings in the post-conviction trial court were very complex because he was a pro se litigant. So there was an initial ruling by the PC trial court that said these claims that were before it at the time were forfeited because they could have been raised on direct appeal. He then came back with subsequent filings. He offered additional bases. And he also said, wait a second, my attorney at that time on direct appeal was my trial attorney. So the court reconsidered its ruling and at that hearing only relied on the merits of the claim to reject the claim at that time. And that's why we're not relying on that holding here, that sort of tentative forfeiture ruling in the trial court because it revisited that and it addressed the merits at that second hearing. So just to sum up, this case is clearly controlled by Clemens versus Feister. There's no basis for this court to reexamine that issue. And even if this were not defaulted, there's no cause to excuse a default. So we would ask this court to affirm. Thank you, counsel. Anything further? Yes, Your Honor. One quick point. Just circling back to the question on the certificate of appealability. The first question was just discussed a moment ago. That was with respect to the circuit state court's misapplication of the waiver principle. And then the second question was the parties were directed to address the district court's conclusion that Mr. Booker procedurally defaulted his claim by objecting to the post-conviction trial court's ruling only in a pro se supplement to a counsel post-conviction appellate brief. And so under that default framework, the excuse prong requires us to look at Reyna's errors. So for that reason, it's under the certificate of appealability. And with that, I have nothing else. Thank you. Thank you very much. Mr. Yavorsky, the court appreciates your willingness and that of your law firm to accept the appointment and your assistance to the court as well as to your client. The case is taken under advisement.